## Kountz et al. vs. Davis.

1. INFANT:    *When he may disaffirm deed.*
   An infant has seven years of the period of limitations, in which, upon coming of age, to disaffirm his conveyance executed in infancy.

2. DESCENTS:    *Dying intestate without issue.*
   J and W, brothers, were joint owners, by purchase, of land. J died, leaving surviving him his father and mother and brothers and sisters. Afterwards, W died, leaving a child, and soon afterwards the child died, without issue, leaving its grandfather and grandmother and uncles and aunts on its father's side. *Held,* That upon the death of J, his interest in the land ascended to his father for life, remainder in fee to his brothers and sisters; and upon the death of the child, its interest in the land ascended to its grandfather and grandmother and uncles and aunts on the father's side in equal parts.

3. QUIT-CLAIM DEED:    *What it conveys.*
   A quit-claim deed conveys only such interest as the grantor then has.

4. GUARDIANS AD LITEM:    *None for unknown infant heirs.*
   Where the number and names of infant heirs are unknown, it is not practicable to appoint guardians *ad litem* for them.

Kountz et al. vs. Davis.

APPEAL from *Benton* Circuit Court in Chancery.
Hon. E. S. McDANIEL, Special Judge.
*Pettigrew, Clark & Williams*, for appellant.
*J. D. Walker, contra.*

HARRISON, J.   Jesse and William Kountz were joint and equal owners by purchase of two tracts of land—one containing 349 acres in Benton county, the other containing 80 acres in Washington county.

Jesse Kountz died in 1861, intestate, leaving surviving him his father and mother, and the following brothers and sisters: his co-tenant, William Kountz, Joseph Kountz, Samuel Kountz, Isaac N. Kountz, Mary Davis, Nancy C. Henry, wife of Frank Henry, and Susan W. Kountz.

William Kountz died in 1863, intestate, leaving a widow, Amanda, who afterwards married Parson S. Packard, and one child.   The name or sex of the child is nowhere stated.

The child died in about a month after its father, and when only four months old; and there were living, at the time of its death, its mother, the said Amanda, its grandfather and grandmother, on its father's side, and the beforementioned brothers and sisters of its father—its uncles and aunts.

William Kountz, at the time of his death, resided on the tract in Benton county.

Michael Kountz, the father of Jesse and William, and grandfather of the child, in 1867, sold and conveyed, by warranty deed, both tracts of land for $800, to William F. Shreve; and Joseph Kountz, Samuel Kountz, Nancy C. Henry and her husband Frank Henry, and Susan W. Kountz, on the eighth day of December, 1869, made him,

but without any consideration therefor, a quit-claim deed to the same.

Shreve, on the thirtieth day of January, 1873, conveyed the lands, without warranty, to the plaintiff, James E. Davis. Isaac N. Kountz, on the first day of May, 1874, conveyed his interest in the tract in Benton county to Amanda Packard.

Mary Davis died in 1866, intestate, leaving children— but whose names, or the number of them, does not appear— who, at the time of her death, were infants. The grandmother of the child, its father's mother, died in 1870, and Michael Kountz in 1872.

James E. Davis filed his complaint in equity against Isaac N. Kountz, the unknown heirs of Mary Davis, and Amanda Packard and her husband, Parson S. Packard, for partition of the lands. He filed with his complaint an affidavit that Isaac N. Kountz, and the heirs of Mary Davis, were non-residents of the state; and an attorney for them was appointed by the clerk, and they were summoned by publication of warning order. The complaint was filed and the suit commenced on the twenty-sixth day of July, 1875.

Joseph Kountz, Samuel Kountz, Nancy C. Henry and her husband Frank Henry, and Susan W. Kountz, were, on their application, made defendants, and filed an answer.

They alleged in their answer that the deeds to Shreve were procured by the fraud of the plaintiff; that Michael Kountz, at the time of his conveyance to Shreve, resided in the state of Tennessee, and had never been in Arkansas, and knew nothing of the quality or value of the lands; that he employed the plaintiff, who lived in Washington county, near the lands, and with whom he was well acquainted—he having lived a near neighbor to him in Ten-

nessee—as his agent to sell the lands, supposing and believing that he was the sole and absolute owner of them—being unacquainted with the law of Arkansas as to the descent of real property, and being so informed by the plaintiff.

That the lands were of good quality, and worth from three thousand to four thousand dollars; and that the plaintiff was well acquainted with them, and knew their value; but Michael Kountz, being an old man, and his mind greatly impaired by age and disease, and having implicit confidence in the plaintiff, and the plaintiff pretending to have found a purchaser for the lands in Shreve, and falsely representing to him that the lands were of inferior quality, and not worth more than $800, he was induced to sell them to Shreve at that price; and that though the purchase was pretendingly by Shreve, and the deed was made to him, it was, in fact, for the benefit of the plaintiff, or he was interested with Shreve in the purchase.

That the quit-claim deed from Joseph, Samuel and Susan W. Kountz, and Henry and wife, which was without consideration, was also procured by the imposition and fraud of the plaintiff, and that they were induced to execute the same, by his false representation to them, who were residents of the state of Tennessee, and ignorant of the law of Arkansas in regard to the descent of real property, and of the fact that they had an interest in the land—that their father was the sole heir of both their brother Jesse, and their brother William's child, and that they had no interest in the estate of either or title to the lands; he pretending to them that his only object in desiring a quit-claim deed from them to Shreve was to satisfy Shreve, who, he said, was a suspicious and whimsical man, and had become uneasy about the title, and censured him, who had acted as the

38

friend of their father in the matter, for inducing him to purchase the lands, and assuring them that, except as affording satisfaction to Shreve, it could do neither harm nor good.

And Susan W. Kountz averred that she was, when she executed the deed of quit-claim, an infant, and she denied for that reason, also, its validity as to her, and disaffirmed it.

They made their answer a cross complaint, and prayed that the deeds to Shreve be set aside and canceled.

Mrs. Packard and her husband also answered the complaint, and their answer, which was substantially the same as the other, was likewise made a cross complaint, and prayed a cancellation of the deeds. Mrs. Packard, besides, claimed dower, in the part or share of the lands of which William Kountz died seized.

The plaintiff filed a reply to the cross complaints.

He denied the misrepresentations and fraud charged against him in respect to Shreve's purchase of the lands, and that he was in anywise interested in the purchase, or acquired any interest in the lands until several years after. Denied that he had any agency in procuring the quit-claim deed, except in writing to Michael Kountz for Shreve, that Shreve had understood that he had had but a life estate in the lands, and that he, Shreve, wanted his children, who owned the remainder in fee, to make him a quit-claim deed. Denied that he in any way influenced the grantors to execute it, but averred that it was given by them in compliance with the wishes of their father, and in consideration of the money Shreve had paid him for the lands.

He admitted that Susan W. Kountz was, at the execution of the quit-claim deed, a minor.

There was no appearance by Isaac Kountz and the heirs of Mary Davis.

Partition of the lands was decreed, subject to the dower of Mrs. Packard in four-sevenths thereof, which was directed to be assigned and set apart to her; and to the plaintiff was adjudged five-sevenths, and to the heirs of Mary Davis, one-seventh of the whole; to Isaac Kountz, one-seventh of the tract in Washington county; and to Mrs. Packard, one-seventh of the tract in Benton county; and commissioners were appointed to make the partition, and to allot and set apart dower.

The defendants, who appeared and made defense, appealed.

The charge of fraud against the plaintiff was not sustained by the evidence.

Some of the witnesses said the lands were worth, in 1869, eight or ten dollars an acre, but it was proven by a letter the plaintiff wrote Michael Kountz, in 1867, but a short time before the sale, produced by the defendants themselves, that he told him that his interest in them—which he then supposed was but Jesse's part—was worth $1,500 or $1,600; and in a later letter he wrote him that he had since been informed by a lawyer, whom he consulted, that Mrs. Packard, whom he had supposed had the title to the other part, had only a life estate in it, and that the remainder in fee, in that also was in him.

The charge of misrepresentation as to the value of the land was, therefore, disproved; and there was no evidence that any representations whatever were made by him to the appellants to induce them to make the deed of quitclaim; but it, on the contrary, clearly appeared that it was made by them in compliance with the wishes of their father, who had been informed by the plaintiff that

Shreve understood that he had only a life estate in the lands, and that the remainder in fee was in his children.

But the court erred in decreeing to the plaintiff four-sevenths of the lands. Susan W. Kountz was, at the time of the execution of the quit-claim deed, a minor, and did not, as was shown by the proof, become of age until 1871; and she had seven years—the period of limitation in which, upon becoming of age, to disaffirm the conveyance. *Bozeman et al. v. Browning et al., 31 Ark., 364; Cresinger v. Lessee of Ketch, 15 Ohio, 156; Drake v. Ramsey, 5 Ohio, 152; Shoul. Dom. Rel., 581.*

It was not alleged, nor attempted to be proven, although her infancy was admitted by the reply, that she had, after becoming of age, done anything in affirmance of it.

Upon the death of Jesse, his father took a life estate in his part of the lands, and his brothers and sisters the remainder in fee; and upon the death of the child of William, its part having come by its father, ascended to its grandfather and grandmother, and uncles and aunts on its father's side, in equal parts in fee. *Kelly's Heirs v. McGuire and Wife, 15 Ark., 555; West v. Williams, ib., 682; Campbell and Wife v. Ware, 27 Ark., 65; Beard et al. v. Mosley and Wife, 30 Ark., 517; Oliver v. Vance, Jr., ante.*

William took one-seventh of Jesse's part. There descended to his child, therefore, four-sevenths of the whole.

Upon the death of the child, one-eighth of this ascended to Michael Kountz, its grandfather, and this, with his life estate in Jesse's half, since expired, he conveyed to Shreve.

The grantors in the quit-claim deed, who were of age, conveyed to him only the interest they then had—the shares that afterwards descended to them from their

Kountz et al. vs. Davis.

mother, who had an equal part with their father and each of the uncles and aunts of the child, have not been parted with; and but three-sixths of six-sevenths, or three-sevenths, were conveyed by them.

Instead, therefore, of five-sevenths, the plaintiff has a half only.

Susan W. Kountz has thirteen-eighty-fourths; Mrs. Davis' children or heirs, thirteen-eighty-fourths; Joseph Kountz, one-eighty-fourth; Samuel Kountz, one-eighty-fourth; Nancy C. Henry, one-eighty-fourth; and Isaac V. Kountz, thirteen-eighty-fourths of the tract in Washington county; and Mrs. Packard thirteen-eighty-fourths of that in Benton county.

The decree, as to the dower of Mrs. Packard, was right.

. It is objected that *guardians ad litem* should have been appointed for Mrs. Davis' children or heirs, and without that no decree should have been made.

Although the heirs of Mrs. Davis were said in the complaint to be her children, and infants at the time of her death, it was also alleged that their names and the number of them were unknown, and the suit was brought against them as unknown heirs. As their number and names were unknown, it was not practicable to appoint guardians; and they were in fact unknown heirs.

The decree of the court below must be reversed, and a decree will be rendered here in accordance with this opinion, and the cause be remanded that it may be carried into effect.