CAMPBELL, v. McSPADDEN.

No. 1635.   Opinion Filed October 27, 1914.

(143 Pac. 1128.)

1   INDIANS — "Approved Rolls"—"Enrollment Records" — Evidence. Under section 3 of the act of Congress of May 27, 1908 (chapter 199, 35 St. at L. 313), the terms "approved rolls" and "enrollment records" have a distinctly different meaning and were intended by Congress to perform separate offices. The term "approved rolls" was intended to be conclusive evidence as to quantum of Indian blood, and the "enrollment records" were intended to be conclusive evidence as to the age of those enrolled.

2.   SAME—"Enrollment Records"—Matters Included. The enrollment records of the Commissioner to the Five Civilized Tribes include and embrace all of the testimony and exhibits tending to establish age that were in evidence before the Commission and the conclusions of the Commission based thereon from the date of the application for enrollment of any particular individual up to the date of the ascertainment by the Commission as to whether the name of such person was intended to be included upon the final roll of the nation in which he claimed citizenship.

3.   SAME—Age of Allottee—Census Card—Effect as Evidence. Under the act of May 27, 1908, the enrollment records are made conclusive evidence as to the age of an allottee in all conveyances made after the approval of said act, and where the "census card" is all the record which the Commissioners made in reference to an allottee's age, and is so certified by the proper officer, such "census card" is admissible and conclusive evidence as to the age of such allottee in conveyances made after the approval of said act.

(Syllabus by Harrison, C.)

*Error from District Court, Craig County;*

*T. L. Brown, Judge.*

Action by R. Vance McSpadden against L. B. Campbell and another. Judgment for plaintiff, and defendant Campbell brings error. Reversed and remanded.

*W. H. Kornegay,* for plaintiff in error.

*W. P. Thompson,* for defendant in error.

Opinion by HARRISON, C.    This action was filed against
L. B. Campbell and D. H. Wilson, October 14, 1908, by R. Vance
McSpadden, who alleged that he was the legal and equitable
owner of, and entitled to the possession of, a certain tract of land
situated in Craig county, Okla., containing about 70 acres; the
same being the homestead and surplus allotments of one Ellis
Williams, a Cherokee freedman.    Defendant Wilson filed sep-
arate answer and cross-complaint, alleging that he was entitled
to the possession of a portion of the land sued for by plaintiff by
virtue of a lease executed by the owner to him and dated June 20,
1908; said lease to run for a term of five years from date thereof.
And, for cross-action against his codefendant, L. B. Campbell, he
claimed superior title and right to possession over his codefend-
ant by virtue of the lease above referred to.    Defendant Campbell
filed separate answer and cross-petition in which he alleged own-
ership in, and right to possession of, a portion of the land in con-
troversy by virtue of a warranty deed dated July 30, 1906, and
to the remainder of the tract by virtue of a five-year agricultural
lease dated July 7, 1906, and by virtue of a subsequent agricul-
tural lease dated May 16, 1908, on the homestead allotment, and
a subsequent warranty deed dated July 29, 1908, to the surplus
allotment.    Plaintiff McSpadden replied to each of the cross-
petitions, alleging that the instruments through and under which
both defendants claimed right to the land were executed before the
grantor therein named was 21 years of age, and that such instru-
ments of conveyance were void because of the grantor's minority
(restrictions as to minority), and further claiming that the deeds
under which he (plaintiff) claimed title were executed subse-
quently to the execution of the instruments under which the de-
fendants claimed and after the grantor had reached the age of
majority; a portion of the land in controversy (30 acres) being
the homestead allotment, and the remainder (40 acres) being the
surplus allotment of the said Ellis Williams.    Plaintiff claimed
under warranty deed from Ellis Buffington, dated September 3,
1908, and warranty deed from Ellis Williams, dated October 26,
1908, claiming that the freedman, Ellis Williams, and Ellis Buf-

fington were one and the same individual, and that the latter deed was made for the purpose of correcting the name of the grantor in the first deed. D. H. Wilson claimed part of the land, the homestead allotment, by virtue of a five-year agricultural lease from Williams dated June 20, 1908, and defendant Campbell claimed the surplus land by virtue of a deed dated July 30, 1906, and a subsequent deed executed to the said party July 29, 1908, and claimed the homestead allotment by virtue of a five-year agricultural lease dated July 27, 1906, and a subsequent agricultural lease to the same tract dated May 16, 1908. The issues, being thus joined, were tried in November, 1909, resulting in a verdict and judgment in favor of plaintiff. From this judgment and order overruling motion for new trial, defendant L. B. Campbell appeals.

Though numerous errors are assigned by plaintiff in error, yet, from a study of the entire record, it seems to us that the age of the grantor, at the time of the execution of the various instruments under which the parties to this action claimed title, is decisive of the case. The entire case rests upon, and the rights of the parties are to be determined by, the age of the grantor, Ellis Williams, on the date of the execution of the instruments of conveyance under which title is claimed, regardless of whether or not errors were committed by the court in other matters.

It is agreed by the parties hereto that, the grantor being a Cherokee freedman, all restrictions as to his power to alienate his surplus allotment were removed from and after April 21, 1904, and that all such restrictions as to his homestead allotment were removed from and after July 27, 1908, except his minority restrictions. Therefore, to determine the validity of the instruments under which the parties hereto claim title, we must ascertain the date upon which the grantor, Ellis Williams, attained his majority.

Section 3 of the act of Congress of May 27, 1908 (35 St. at L. 312, c. 199), provides:

"The rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be

conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter, be conclusive evidence as to the age of said citizen or freedman."

In the case of *Scott v. Brakel et al.,* 43 Okla. 655, 143 Pac. 510, this court, in an opinion by Chief Justice Kane, after an exhaustive review of the legislative history pertaining to said section 3 of the act of May 27, 1908, and discussion of the respective offices of and distinction between the terms "rolls" and "enrollment record," concludes that under said act the enrollment records were made conclusive evidence as to the age of an allottee in conveyances made after the approval of such act. The court also defines what is meant by the "enrollment records" in the following language:

" * * * Congress intended 'the enrollment records of the Commissioner of the Five Civilized Tribes' to include and embrace all of the testimony and exhibits tending to establish age that were in evidence before the Dawes Commission, and the conclusions of the Commission based thereon, from the date of the application for enrollment of any particular individual up to the time of the ascertainment by the Commission as to whether the name of such person was to be included upon the final roll of the nation in which he claimed citizenship. It is true that in many instances the census card consists of an entry of a summary of the evidence of the applicant at the time the application was made, whilst in other instances, where the testimony of the applicant was not taken down by a stenographer and subsequently transcribed, the entries consisted of the epitomized statements of the witness reduced to census-card form. In such cases the census card is of necessity the enrollment record, and, where the Commissioner to the Five Civilized Tribes certifies that the census card constitutes the entire enrollment record as to the person whose name appears thereon, that will be sufficient. There are many instances where the census card constitutes substantially the complete enrollment record. In such cases, it is admissible as conclusive evidence as to age, not as a census card, but as 'the enrollment record,' when so certified by the proper officer.".

Campbell v. McSpadden.

In the case at bar, the court, over the objection of defendant Campbell, received in evidence and allowed to be read to the jury a purported copy of the Cherokee freedman roll as conclusive evidence that the allottee was enrolled as of September 1, 1902, and would therefore attain his majority on September 1, 1908. In this the court was in error. In *Scott v Brakel, supra,* the court said:

"This brief bit of legislative history makes it quite clear that, as the matter appeared to Congress, the 'enrollment records' were something different from the 'approved rolls' first recommended by the House as conclusive on both quantum of blood and age, and something more than the 'census card' recommended by the Senate as conclusive upon the question of age. If we are correct in this, it would follow that to hold the 'approved rolls' to be conclusive as of both age and quantum of blood would be to put a construction upon the act which Congress specifically repudiated, and to hold that the 'approved rolls' are conclusive as to age would be to insert into the act by construction an amendment which the House refused to accept, and which the conference committee of both Houses finally rejected."

It is evident from the record that the jury regarded this copy of the rolls, together possibly with some oral testimony that was received, as conclusive evidence that the allottee attained his majority on September 1, 1908, and that all conveyances executed prior to such date were void, and those made subsequently to such date were valid. It follows, therefore, that the conclusion of the jury was reached upon evidence which Congress did not intend should be regarded as conclusive of the age of allottees. It also follows that the court erred in overruling the motion for new trial.

At the time the cause was tried in the court below, the questions as to what was meant by the "approved rolls" and the "enrollment records," the distinction between them, and what was embraced within the term "enrollment records" had not been decided by this court. But under the light of the decisions in *Scott v. Brakel, supra,* and in *Phillips et al. v. Byrd,* 43 Okla. 556, 143 Pac. 684, the errors into which the court fell in the trial below may be easily avoided in another trial, and both court and

counsel may be enabled to know what is competent and what is conclusive evidence as to the age of allottees in conveyances made after the approval of the act of May 27, 1908. Also, in the light of that decision, the other errors complained of will necessarily be eliminated.

For the reasons herein given, the original opinion is withdrawn, this one filed in its stead, and the judgment reversed and the cause remanded.

By the Court: It is so ordered.